Kevin J. Stoops (State Bar #332200)
SOMMERS SCHWARTZ, P.C.
1801 Century Park E. Suite #860
Los Angeles, CA 90067
Telephone: (310) 579-0600
Email: kstoops@sommerspc.com

Attorneys for Plaintiff **CIARA GLASGOW BROWN**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CIARA GLASGOW BROWN**, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br>v.<br><br>**LPL FINANCIAL, LLC**, a limited liability company,<br><br>Defendants. | Case No: '26CV3358 JLS DEB<br><br>Judge:<br>Mag. Judge:<br><br>**PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND** |

**<u>COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND</u>**

Plaintiff Ciara Glasgow Brown, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against LPL Financial, LLC ("Defendant"), to recover unpaid wages, liquidated damages, interest, attorney's fees, costs and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq*. and common law. Plaintiff's allegations herein

are based upon knowledge as to matters relating to herself and upon information and belief as to all other matters.

**INTRODUCTION**

1. Plaintiff and the putative collective members consist of current and former customer service representatives, or similar positions ("CSRs"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its CSRs for all pre-, mid-, and post-shift off-the-clock work and failed incorporate attendance bonuses into the overtime rate of pay.

2. Regardless of the specific job title, all CSRs: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and attendance policies; and (6) had the primary job duty of providing customer support.

3. Defendant required its CSRs to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers and logging into numerous software programs. The CSRs only "clocked in" and received compensation after this preliminary work was completed, though they were required to perform this work to be "phone ready" when their scheduled shifts began.

4. A CSRs' failure to be "phone ready" when the scheduled shift began would result in disciplinary action.

5. The CSRs routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the CSRs, even those CSRs who were scheduled and paid for only forty (40) hours per week, worked over forty (40) hours per week without the required overtime premium for all time worked over forty (40) hours.

6. Defendant, through its managers, had actual and constructive knowledge that its CSRs were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its CSRs to complete this unpaid work.

7. Defendant's practice of failing to compensate its CSRs for all hours worked and at the correct rate of pay violated the CSRs' rights under the FLSA.

8. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former similarly situated CSRs, or similar positions, who work or have worked for Defendant at any time during the past three years.***

9. Defendant is liable for its failure to pay its CSRs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

10. CSRs who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre-, mid-, and post- shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. §§ 201, *et seq.*

12. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

13. Defendants' annual sales exceed $500,000, and they have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff and the CSRs, engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

14. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

15. This Court has personal jurisdiction over Defendant because Defendant conducts business within the State of California and maintains a principal place of business in the State of California.

16. Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts business in this District, and maintains a principal place of business in this District.

17. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

18. Plaintiff Ciara Glasgow Brown is resident of the Village of Loch Loyd, Missouri. Plaintiff worked for Defendant as a full-time remote CSR from approximately October 2022 through February 2025.

19. Defendant compensated Plaintiff for her services as a CSR in the form of an hourly wage, most recently at the rate of $23.00. Plaintiff executed her Consent to Join form attached hereto as **Exhibit A.**

20. Additional putative Collective and Class members were or are employed by Defendant as hourly employees ("Hourly Employees") during the past three (3) years and their consent to join forms will also be filed in this case.

21. According to its website, Defendant is the "nation's largest

independent broker-dealer firm,"[1] Defendant is committed to the success of every financial professional, team, and program [they] serve."[2]

22. Defendant is a corporation with its corporate headquarters located at 4704 Executive Drive, San Diego, CA 92121.

23. Defendant maintains a registered agent for the purpose of service of process as CT Corporation System, 330 N. Brand Blvd., Suite #700, Glendale, CA 91203.

24. Defendant is an "enterprise" through "common operations" and/or "common control under the FLSA, 29 U.S.C. § 201, *et seq.*

## <u>GENERAL ALLEGATIONS</u>

25. Throughout their employment with Defendant, Plaintiff and the other CSRs were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

26. Defendant employs hundreds, if not thousands, of CSRs who provided customer service and support to Defendant's customers throughout the United States.

27. Defendant compensated CSRs on an hourly basis and classified them as non-exempt employees under the FLSA.

28. Upon information and belief, Defendant maintained documents that demonstrated the promised hourly wage for each CSR, including but not limited to: offer letters, paystubs, and/or other payroll records.

29. Plaintiff and Defendant's CSRs typically worked five (5) days each week and forty (40) hours or more in a workweek.

30. There were many instances during Plaintiff's employment where she worked forty (40) hours or more in a workweek.

31. Defendant provided training to CSRs on, *inter alia*, how to carry out

---

[1] *See* https://career.lpl.com/ (last visited May 7, 2026).
[2] *See* https://career.lpl.com/who-we-are (last visited May 7, 2026).

their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day; the importance of attendance and schedule expectations; and Defendant's policies.

32. The training that all of Defendant's CSRs received was substantially, if not entirely, the same and Defendant's CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

33. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

34. To the extent that Defendant had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies which resulted in CSRs, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

35. Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs and applications in order to perform their job duties.

36. Defendant issued work scheduled to Plaintiff and other similarly situated CSRs that strictly dictated Defendant's work expectations, specifically "phone ready" requirements.

37. More specifically, Defendant instructed Plaintiff and other similarly situated CSRs to be "phone ready" (meaning logged into and have ready all computer programs and applications they utilized as part of their job duties) the moment their scheduled shifts started. This required Defendant's CSRs to load and log into their essential work-related computer programs and applications *before* the start of their shifts and *before* they were allowed to clock in so they could be prepared to field Defendant's customers' inquiries the moment their shifts began.

38. Defendant issued work schedules to Plaintiff and other similarly situated CSRs that strictly dictated Defendant's work expectations, specifically,

"phone ready" requirements.

39. During the boot-up and login process, Defendant's CSRs sometimes experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

40. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-shift work off-the-clock.

41. These policies and procedure, which were utilized for purposes of evaluating CSR job performance, effectively enforced the "phone ready" policy and required CSRs to perform off-the-clock work.

42. Pursuant to these policies and procedures, Defendant's CSRs, including Plaintiff, faced warning, coaching, poor performance evaluations, performance improvement plans ("PIPs"), other disciplinary action, and termination for failing to be "phone ready."

43. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the court of performing their job responsibilities. These programs and applications were and integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

44. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computer and applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

45. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching their contracts with their CSRs.

46. Further, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

47. Defendant knew or should have known that the FLSA requires employers to compensate employees for all hours worked during the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a), *see also* CA Labor Code § 1197 (2025).

48. Defendant also knew or should have known that 29 U.S.C. § 207 requires non-exempt employees who work more than forty (40) hours in a workweek to be paid overtime at one and one-half times their regular rate of pay, which includes compensable boot-up and call-ready work.

49. Nevertheless, Defendant failed to pay Plaintiff and all other current and former CSRs overtime compensation at one and one-half times their regular rates of pay for the off-the-clock work described herein.

50. Despite knowing Plaintiff and all other CSRs performed this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

51. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and other CSRs boot-up and logged into their computers each day, along with the time they logged into the timekeeping system.

52. Defendant was aware that Plaintiff and the CSRs worked more than forty (40) hours in multiple workweeks because Defendant's own payroll and scheduling records documented the hours they were scheduled to work and the hours for which Defendant issued payment.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

53. Defendant's CSRs were trained or required to start up and log into Defendant's computer network and software programs in order to access the information necessary to perform their job duties and be considered "phone ready"

*before* "punching into" Defendant's timekeeping system.

54. The pre-shift boot-up and login process was the same whether CSRs worked remotely or in-office and generally consisted of the following steps:

a. Wake up or power on their computer;

b. Log into Microsoft Windows with their username and password;

c. Connect and log into Defendants' server (the Virtual Private Network or "VPN") using a two-factor authentication;

d. Open and log into Microsoft Outlook (Defendants' email application);

e. Open and log into Microsoft Teams (Defendants' application for internal communications with managers and other team members);

f. Open and log into Notepad (Defendant's application for creating text files);

g. Open and log into SharePoint (Defendant's application for document storage);

h. Open and log into Avaya software (Defendant's application for telephone communication);

i. Open and log into ADP software (Defendant's application for timekeeping);

j. Launch Defendant's Intranet through a web browser;

k. Clock in and go into an "available" status.

55. The boot-up and login process described above took approximately ten (10) to twenty (20) minutes per shift.

56. If CSRs arrived at their computers immediately prior to their scheduled shifts they were in danger of discipline for being late because they could not complete the required pre-shift work necessary to be "available" in Avaya and ADP when their scheduled shifts began, and Defendant considered them tardy.

57. Defendant expected Plaintiff and all other CSRs to respond to customer inquiries and handle calls for the entirety of their scheduled shifts. This expectation

coupled with Defendant's attendance and adherence policies, necessarily required CSRs to perform work off-the-clock in order to be fully prepared and "available" at the start of their shifts

58. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting up and logging in directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

59. Despite knowing Plaintiff and all other CSRs perform this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

**B. <u>Meal-Period (Mid-Shift) Off-the Clock Work</u>**

60. Defendants promised Plaintiff and similarly situated CSRs one unpaid 30-minute meal period each eight (8) hour shift.

61. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *<u>completely relieved</u>* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

62. At all relevant times, Plaintiff and Defendants' CSRs regularly performed approximately two (2) to five (5) minutes of compensable work for Defendants during their uncompensated "meal breaks."

63. More specifically, Defendants required Plaintiff and similarly situated CSRs to return to their computer stations prior to the end of their unpaid meal periods

to log back in and place themselves in a "available" state so they could resume taking calls promptly at the end of their scheduled meal periods.

64. If CSRs were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal breaks, they were considered out of adherence and could be subjected to disciplinary action.

65. The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefited Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

66. Defendants did not prohibit Plaintiff and similarly situated CSRs from working during their "meal breaks." Instead, Defendants routinely suffered or permitted them to perform such work and routinely failed to ensure that work was not being performed during their "meal breaks."

67. Defendants knew or should have known that Plaintiff and their CSRs performed work during their unpaid "meal breaks" because, *inter alia*, Plaintiff and the CSRs performed such work for Defendants at management's request and were rewarded for it through Defendants' schedule adherence metrics.

**C. <u>Post-Shift Off-the-Clock Work</u>**

68. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

69. The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from three (3) to five (5) minutes per shift.

70. Defendants' CSRs are also not paid for their post-shift off-the-clock work.

71. The post-shift off-the-clock work Plaintiff and other CSRs perform is compensable, directly benefits Defendants and the tasks undertaken in connection

with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### D. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claims</u>

72. "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

73. Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which she was not paid.

74. During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight time wages, in breach of Defendants' contracts with their CSRs.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

75. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of herself and on behalf of:

> ***All current and former hourly CSRs who work or have worked for Defendant at any time in the last three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

76. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated.

77. Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation in workweeks during which they worked more than forty (40) hours.

78. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the

Plaintiff and the proposed FLSA Collective performed.

79. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

80. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and
b. Willfully failing to record all of the time that its employees, including Plaintiff and the FLDA Collective members, worked for Defendant's benefit.

81. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

82. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the CSRs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because(a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely Defendant's practices, policies, or plan of not paying its CSRs for all overtime wages in violation of the FLSA); (c) their claims are based on the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

83. Upon information and belief, Plaintiff estimates, the FLSA Collective, including both current and former CSRs over the relevant period, includes several thousands of members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from review of Defendant's personnel, scheduling, time, and payroll records.

84. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

85. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and on behalf of:

> ***All current and former hourly CSRs who work or have worked for Defendant anywhere in the United States during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition as necessary.

86. *Numerosity:* The members of the Rule 23 Nationwide Class are so numerous that joinders of all members would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members, each of whom should be easy to identify from Defendant's computer systems and personnel and payroll records.

87. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual

members. These common legal and factual questions include, but are not limited to the following:

a. Whether the pre-shift time the Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable;

b. Whether Defendant's non-payment of wages for all compensable time amount to a breach of contract and/or resulted in Defendant being unjustly enriched; and

c. The proper measure of damages sustained by the Rule 23 Nationwide Class.

88. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Nationwide Class members in that Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

89. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

90. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Nationwide Class members, even if each class member counsel afford to litigate a separate claim, this Court should not

countenance or require the filing of hundreds, or thousands, or identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant supplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 Nationwide Class members' claims, create significant economies of scale for the Court and the parties, and would result in a binding, uniform adjudication on all issues.

91. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant maintains a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

92. Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 449 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

93. Because Defendant acted and refused to act on ground that apply generally to the Rule we Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **COUNT I**
## **VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

94. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

95. At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

96. At all times relevant to this action, Plaintiff was an "employee" of

Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

97. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

98. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were are all non-exempt employees.

99. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

100. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

101. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.1, *et seq*.

102. At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed.

103. The off-the-clock work Plaintiff and the FLSA Collective performed every shift was an essential part of their job duties and the activities and the time associated with the activities was significant.

104. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time

discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

105. As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

106. Defendants could have easily accounted for and properly compensated Plaintiff and the FLSA Collective members for all work activities, but did not.

107. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendants including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## (On Behalf of the Rule 23 Nationwide Class)
## BREACH OF CONTRACT

108. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

109. Defendant had binding and valid contracts with Plaintiff and the Rule 23 Class to pay each employee for each hour their worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

110. For example, Defendant offered to compensate Plaintiff at a wage certain per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as a CSR in reliance on the offer.

111. Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job

and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with the work activities described herein.

112. By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class.

113. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class members more than the federally mandated minimum wage of $7.25 per hour in workweeks in which they worked less than forty (40) hours (i.e., a pure "gap time" claim).

114. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

115. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**(On Behalf of the Rule 23 Nationwide Class**
**UNJUST ENRICHMENT**

116. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

117. This Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

118. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed the benefit of Defendant.

119. Plaintiff and every other Rule 23 Nationwide Class member relief upon

Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

120. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

121. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

122. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

123. Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

124. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

125. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and telephone numbers of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

d. An order designating Plaintiff to act as the representative of the FLSA Collective and the Rule 23 Nationwide Class, and the undersigned counsel as class counsel for the same;

e. An Order declaring Defendant violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant's violations of the FLSA were willful;

g. An Order declaring that Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) hourly rate;

h. An Order declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

i. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23

Nationwide Class the full amount of damages and liquidated damages available by law;

j. An Order compelling a complete accounting of all the compensation that Plaintiff and all others similarly situated are owed;

k. An Order awarding reasonable attorney's fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. An Order awarding such further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Date: June 2, 2026

**SOMMERS SCHWARTZ, P.C.**

*/s/ Kevin J. Stoops*

Kevin J. Stoops
SOMMERS SCHWARTZ, P.C.
1801 Century Park East, Suite 860
Los Angeles, CA 90067
(248) 355-0300
kstoops@sommerspc.com

*Attorneys for Plaintiff Ciara Glasgow Brown*